IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LISA KYSER**<br>112 Whittington Place<br>Pataskala, OH 43062<br><br>v.<br><br>**JAVITCH BLOCK LLC**<br>**F.D.B.A. JAVITCH BLOCK &**<br>**RATHBONE LLP**<br>c/o Theodore Konstatinopoulos, Reg. Agent<br>1100 Superior Ave, 19th Floor<br>Cleveland, OH 44114<br><br>    and<br><br>**REIMER, ARNOVITZ, CHERNEK &**<br>**JEFFREY, CO LPA**<br>c/o Dennis Reimer, Registered Agent<br>30455 Solon Road<br>Solon, OH 44139 | CASE NO.<br><br>JUDGE<br><br>MAGISTRATE<br><br><u>COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND THE OHIO CONSUMER SALES PRACTICES ACT, AND COMMON LAW FRAUD</u><br><br><u>JURY DEMAND ENDORSED HEREON</u> |

Now comes Lisa Kyser, by and through counsel, and hereby states for her Complaint against Defendants Javitch Block LLC and Reimer, Arnovitz, Chernek, & Jeffrey, Co, LPA as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This action arises, *inter alia*, out of violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.*, committed by Defendants Javitch Block LLC  ("Javitch") and Reimer, Arnovitz, Chernek, & Jeffrey, Co, LPA ("Reimer").

1

2. This court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1692k(d) and 28 U.S.C. §§ 1331, as well as pursuant to 28 U.S.C. § 1367 for pertinent state law claims.

3. Plaintiff Lisa Kyser is a natural person and was, at all times relevant, a resident of Pataskala, Ohio.

4. Defendant Javitch is a law firm engaged in the practice of collection of consumer debt and is a debt collector as the term is defined in the FDCPA.

5. Defendant Reimer is a law firm engaged in the practice of collection of consumer debt and is a debt collector as the term is defined in the FDCPA.

6. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391 as the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

## STATEMENT OF FACTS

7. Plaintiff Lisa Kyser has been forced to defend herself against two different lawsuits filed by two different debt collection firms on behalf of two different securitized trusts each demanding different amounts, all on the same credit agreement.

8. In its collections action, Javitch presented no evidence that the obligation in question was ever transferred to the trust it represented, and the firm made no effort to verify the validity of the debt and continued to maintain its suit even after Plaintiff notified Javitch that another creditor was simultaneously attempting to collect the same debt.

9. In its collections action, Reimer presented incomplete and inconsistent evidence that the obligation had been transferred, attaching part of a series of securitization documents, but omitting the schedule of loans included in each document, making it impossible to verify whether and when the obligation had in fact been transferred to the trust in question.

10. Reimer made no effort to verify the validity of the debt and continued to maintain its suit even after Plaintiff notified Reimer that another creditor was attempting to collect the same debt.

11. The conduct of each Defendant in pursuing the collections actions made it impossible for Plaintiff to determine whether a loan obligation had ever been validly transferred to either securitized trust attempting to collect the debt.

12. The conduct of Defendants caused Plaintiff great mental distress and made it necessary for Plaintiff to hire legal counsel to defend two lawsuits simultaneously.

## *Background*

13. Plaintiff enrolled as a college student at Columbus State Community College in 2006.

14. To finance her education, on June 20, 2006, Plaintiff applied for private student loan from National City Bank in the amount of $12,000.

15. The loan application provided that "this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and any obligations under

this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code."

16. Plaintiff later applied for a new loan to fund her studies at Columbus State Community College in Spring 2007, but within days withdrew from studies for serious health reasons, and upon information and belief the loan was either not disbursed or the funds were returned to the originating lender within days of the disbursement date.

17. On June 16, 2016, Defendant Javitch filed a complaint against Plaintiff (hereinafter referred to as "Javitch case") in the Licking County Court of Common Pleas on behalf of National Collegiate Student Loan Trust 2006-3 ("NCSLT 2006-3"), seeking to enforce the June 20, 2016 credit agreement. (See Javitch Complaint, attached hereto as Exhibit 1.)

18. In paragraph 1 of its complaint, Javitch alleged that NCSLT 2006-3 "is the holder of a Promissory Note(s) executed by the Defendant on June 20, 2006. A copy of the said Promissory Note(s) is attached hereto and incorporated herein as "Exhibit A". (*Id.*)

19. Javitch attached only the first page of the five page credit agreement to its complaint, choosing to omit the remaining four pages detailing the loan application terms.

20. Javitch further alleged in paragraph 2 of its complaint that NCLST 2006-3 was owed "$16,796.26 plus accrued interest of $3,362.91 for a total of $20,159.17." (*Id.*)

4

21. On June 28, 2016, Defendant Reimer filed a separate lawsuit (hereinafter referred to as "Reimer case") seeking to enforce the June 20, 2016 credit agreement against Plaintiff in the Licking County Municipal Court on behalf of National Collegiate Student Loan Trust 2007-2 ("NCSLT 2007-2"), in a case captioned *NTL Collegiate Trust LN Trust 2007-2 v. Lisa Kyser*, Case No. 16 CV01417. (See Reimer Complaint, attached hereto as Exhibit 2.)

22. In its complaint, Reimer demanded $8,737.52 and accrued interest of $1,987.13. (*Id.*)

23. In paragraph 7 of the complaint, Reimer alleged that "Defendant entered into a Promissory Note. A copy of the Promissory Note is attached hereto and incorporated herein as "Exhibit A."

24. Reimer attached as an exhibit to the complaint the June 20, 2016 loan application. (*Id.*)

25. In paragraph 8 of the complaint, Reimer specifically alleged that "[s]aid student loan was subsequently assigned to NTL COLLEGIATE STNDT LN TRST 2007-2. A copy of the assignment is attached and hereto and incorporated herein as 'Exhibit B'." (*Id.*)

26. Exhibit B to the Reimer complaint consisted of portions of a 2007-2 Pool Supplement between National City Bank and The First Marblehead Agreement, purporting to transfer loans from National City Bank to the National Collegiate Funding LLC for subsequent transfer to NCSLT 2007-2. (*Id.*, at Ex. B.)

5

27. Exhibit B to the Reimer complaint also included an incomplete copy of a Deposit and Sale Agreement between National Collegiate Funding LLC and NCSLT 2007-2. (*Id.*)

28. In Exhibit B to the complaint, Reimer chose to omit the schedule of transferred loans for both the Pool Supplement and the Deposit and Sale Agreement, making it impossible to determine whether the June 20, 2006 credit agreement was in fact included in the list of transferred loans.

29. The same June 20, 2006 credit agreement was attached as an exhibit and incorporated into the separate complaints filed by Javitch and Reimer on behalf of NCSLT 2006-3 and NCSLT 2007-2.

30. On July 13, 2016, Plaintiff filed a *pro se* answer to Javitch's suit, denying that NCSLT 2006-3 had standing to bring suit and raising a number of affirmative defenses.

31. On August 15, 2016, Plaintiff filed a *pro se* answer to Reimer's complaint, denying that NCSLT 2007-2 had standing to bring suit, and placing Reimer on notice that a separate suit had also been filed in the Licking County Court of Common Pleas attempting to collect the same debt.

32. On September 27, 2016, during a scheduling conference in the Javitch case, Plaintiff advised Javitch and the Court that a separate suit had been filed against her by Reimer concerning the same debt, and the Court set the case for trial on November 18, 2016.

33. Although Javitch was informed that Reimer was attempting to collect the same debt, Javitch took no steps to investigate or verify the validity of the debt, and continued to move forward with the litigation.

34. In early October, after her attempts to resolve the matter on her own were unsuccessful, Plaintiff retained legal counsel to defend against the lawsuits filed by both Javitch and Reimer.

35. On October 18, 2016, Plaintiff's counsel advised Eric Wasserman, the Reimer attorney handling the case, that Javitch was attempting to collect the same debt, and Mr. Wasserman agreed to investigate the situation.

36. On October 19, 2016, Plaintiff's counsel entered an appearance in the Javitch case, and began preparing for the trial scheduled for November 18, 2016.

37. On October 20, 2016, Plaintiff's counsel entered an appearance in the Reimer case and filed an unopposed motion for leave for 30 days to file an amended pleading, which was granted.

38. On November 10, 2016, Plaintiff's counsel filed a pretrial statement in the Javitch case.

39. On November 14, 2016, only four days before the date of trial, Javitch dismissed its case without prejudice.

40. On November 16, 2016, Plaintiff filed an amended answer and affirmative defenses in the Reimer case challenging the standing of NCSLT 2007-2 to enforce the June 20, 2006 credit agreement.

7

41. On November 17, Plaintiff served discovery requests in the Reimer case.

42. On November 30, 2016, Reimer dismissed its case without prejudice.

43. During the litigation, Javitch never produced any evidence demonstrating that the June 20, 2006 credit agreement had been effectively transferred to NCSLT 2006-3.

44. During the litigation, Reimer never produced any evidence demonstrating that the June 20, 2006 credit agreement had been effectively transferred to NCSLT 2007-2.

45. The conduct of Javitch and Reimer in simultaneously attempting to collect the same debt on behalf of two different NCSLT trusts caused Plaintiff great mental distress.

46. The conduct of Javitch and Reimer in initiating and pursuing litigation against Plaintiff in the absence of any evidence that they had the right to collect the debt caused Plaintiff to incur significant legal fees to defend herself from the prospect of two judgements on the same debt.

47. The conduct of Javitch and Reimer in failing to verify the debt after Plaintiff disputed the validity of the debt in writing caused Plaintiff to incur significant legal fees to defend herself from the prospect of two judgements on the same debt.

<u>COUNT ONE:
VIOLATIONS OF THE FDCPA  - BOTH DEFENDANTS
(15 U.S.C. § 1692, *ET SEQ.*)</u>

48. Plaintiff restates and incorporates each of her allegations contained in the preceding paragraphs as if fully rewritten herein.

49. Plaintiff is a consumer as defined in 15 U.S.C. § 1692(a)(1).

50. The June 20, 2006 credit agreement is a debt, as defined in 15 U.S.C. § 1692(a)(5).

51. Defendant Javitch is a debt collector as the term is defined in 15 U.S.C. §1692(a)(6).

52. Defendant Reimer is a debt collector as the term is defined in 15 U.S.C. §1692(a)(6).

53. The acts of Defendant Javitch in attempting to collect the debt at issue, to which it had no enforceable right, constitute violations of the FDCPA, including, but not limited to the following sections:

   A) § 1692(d)—Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person;

   B) § 1692(e)—Making any false, deceptive, or misleading representation or means in connection with the debt collection;

   C) § 1692(e)(2)—Misrepresenting the character, amount, or legal status of the alleged debt;

   D) § 1692(f)—Engaging in any unfair or unconscionable means to collect or attempt to collect the alleged debt; and,

   E) § 1692(f)(1)—Engaging in an attempt to collect any amount not authorized by the agreement creating the debt or permitted by law.

54. The acts of Defendant Reimer in attempting to collect the debt at issue, to which it had no enforceable right, constitute violations of the FDCPA, including, but not limited to the following sections:

- A) § 1692(d)—Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person;
- B) § 1692(e)—Making any false, deceptive, or misleading representation or means in connection with the debt collection;
- C) § 1692(e)(2)—Misrepresenting the character, amount, or legal status of the alleged debt;
- D) § 1692(f)—Engaging in any unfair or unconscionable means to collect or attempt to collect the alleged debt; and,
- E) § 1692(f)(1)—Engaging in an attempt to collect any amount not authorized by the agreement creating the debt or permitted by law.

55. Plaintiff was harmed when Defendants Javitch and Reimer attempted to collect a debt on behalf of parties not entitled to collect upon and/or enforce the debt.

56. As a consequence of Defendants' conduct, Plaintiff experienced great mental distress.

57. As a consequence of Defendants' conduct, Plaintiff was required to retain legal counsel and defend against two separate debt collection actions.

58. Plaintiff was harmed by and through the aforementioned violations committed by Defendants Javitch and Reimer, and is entitled to statutory damages, actual damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692(k)(a) from each Defendant.

## COUNT TWO:
## VIOLATION OF CSPA – BOTH DEFENDANTS
## (O.R.C. § 1345.01, *ET SEQ.*)

59. Plaintiff restates and incorporates each of her allegations contained in the preceding paragraphs as if fully rewritten herein.

60. The improper, illegal, and abusive debt collection practices of Defendants Javitch and Reimer are in violation of the FDCPA, which also constitute unfair and deceptive practices in violation of the Ohio Consumer Sales Practices Act.

61. Defendants Javitch and Reimer each violated O.R.C. § 1345.02(B)(10) by making a false representation that Plaintiffs owed a legal obligation to NCSLT 2006-3 and NCSLT 2007-2 respectively.

62. Defendants' conduct caused Plaintiff great distress and required her to spend time and effort attempting to verify the validity of the debt and to defend herself from two separate collections actions simultaneously.

63. Defendants' conduct also required Plaintiff to retain legal counsel to defend against two separate collections actions.

64. Plaintiff is entitled from each Defendant to treble damages and non-economic damages including damages for legal fees to defend the collections actions, currently totaling $6,752.25, and compensation for mental anguish in the amount of $5,000.00.

65. Defendants' violations are known violations of the OCSPA and therefore entitle the Plaintiff to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Lisa Kyser prays that this Court enter its order granting judgment in her favor for the following:

A) For actual damages in an amount to be determined at trial as to Count One and Two;

B) For treble damages for Count Two;

C) For statutory and punitive damages in an amount to be determined at trial;

D) For costs, and reasonable attorneys' fees; and

E) Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Emily White
Emily White  (0085662)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
The Dann Law Firm Co., LPA
PO Box 603104
Cleveland, OH 44103
216/373-0539
216/373-0536 – fax
notices@dannlaw.com
**Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Emily White
Emily White  (0085662)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
The Dann Law Firm Co., LPA